David P. Hirschi (U.S.B. No. 1502)
Justin R. Baer (U.S.B. No. 11035)
**HIRSCHI CHRISTENSEN, PLLC**
136 East South Temple, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 322-0593
Facsimile: (801) 322-0594

Attorneys for Stewart Title Guaranty Company

```
                    FILED
           U.S. DISTRICT COURT

           2008 OCT 23  P  1: 52

              DISTRICT OF UTAH

           BY:_____
              DEPUTY CLERK
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY,<br><br>   Plaintiff,<br><br>vs.<br><br>BAYLOR STEVENS,<br><br>   Defendant. | **JUDGMENT**<br><br>Civil No. 2:08-cv-00349 DB<br><br>Judge Dee Benson<br>Magistrate Judge David Nuffer |

THIS MATTER came before the Court on Plaintiff's Motion for Default Judgment. The Court, having reviewed the motion and supporting memorandum, finds as follows:

1.    Plaintiff filed its Complaint in this matter on May 6, 2008.

2.    On July 29, 2008, the Court entered an order authorizing service by publication. Plaintiff complied with that Order, and completed service of process upon the Defendant by publishing the summons in the Intermountain Commercial Record for 2 issues, first published on August 1, 2008, and last published on August 8, 2008. Service was complete by August 15, 2008.

1

3.  Defendant's default was entered by the Court Clerk on September 17, 2008.

4.  To date, Defendant has still not filed an answer or otherwise appeared in this matter.

5.  Because Defendant has failed to answer or otherwise appear, and the Clerk has entered Defendant's default, Defendant is not entitled to service of the motion for default judgment or this order.

6.  Because Defendant has failed to answer or otherwise appear, and the Clerk has entered Defendant's default, the factual allegations of the Complaint are deemed admitted.

7.  The Note, Deed of Trust, and Indemnity Contract were attached as exhibits to Plaintiff's Complaint, and are deemed true and correct copies due to Defendant's default.

8.  Along with its Motion for Default Judgment and memorandum in support, Plaintiff submitted the declaration of Nancy Frandsen to establish the amount of damages, and the declaration of Justin Baer to establish the amount of attorney's fees.

9.  The Court finds that the documents of record are sufficient to make a finding of damages.

## FACTUAL FINDINGS DEEMED ADMITTED FROM PLAINTIFF'S COMPLAINT

10.  Plaintiff Stewart Title Guaranty Company (hereinafter "Stewart" or "Plaintiff") is a corporation organized under the laws of the State of Texas, with its principal place of business in Houston, Texas.  For all relevant times hereto, Stewart has been authorized to do business and has been conducting business in the State of Utah.

11.  Defendant Baylor Stevens is an individual residing in Salt Lake County, State of Utah.

2

12.    In March, 2005, Defendant obtained a loan from Eastern Savings Bank, fsb ("Eastern") in the amount of $920,000.00.

13.    As consideration for the loan, Defendant executed a Note and a Deed of Trust.

14.    In applying for the loan, Defendant executed an affidavit and indemnity contract acknowledging that no loans, unpaid judgments, or liens existed on the property.

15.    The Note was secured by a Deed of Trust recorded against property located at 4646 Jupiter Dr., Salt Lake City, UT 84124 (the "Property").

16.    The Deed of Trust contained a covenant wherein Defendant covenanted that the secured property was unencumbered, except for encumbrances of record.

17.    Before obtaining the loan from Eastern, Defendant had also obtained loans from Washington Mutual Bank, Lighthouse Funding Group, Weenig Management Corporation, Bank of Idaho, Loan One, and Clark Real Estate.  Each of the foregoing entities had recorded trust deeds against the Property.

18.    In order to induce Eastern to loan money, Defendant recorded fraudulent reconveyances of several of the trust deeds identified in the foregoing paragraph.  Therefore, when Eastern conducted its due diligence on the loan, a title search revealed that all encumbrances on the secured property had been reconveyed, and Eastern's Deed of Trust would be a first position lien on the property.

19.    Eastern had no knowledge that the reconveyances were fraudulent, and Eastern relied on the reconveyances in determining to provide the loan to Defendant.  If Eastern had known the reconveyances were fraudulent, or if it had known it did not have a first-priority lien on the secured property, it would not have loaned any money to Defendant.

20.     By approximately October, 2005, Defendant still had not made any payments to Eastern. Also by that time, Eastern discovered that other lenders were alleging that the reconveyances of record on the secured property were forgeries. Therefore, Eastern made a claim to Plaintiff under its policy of title insurance. Plaintiff paid the claim and received an assignment of Eastern's Deed of Trust.

21.     In addition to the various secured creditors, Defendant had also obtained loans from various un-secured creditors. Therefore, due to Defendant's fraudulent activities in recording forged reconveyances, a receivership action was commenced in December, 2005, to preserve the property.

22.     The receivership action was titled *In re Real Property Located at Juniper Drive, Salt Lake City, Utah*, Case No. 2:05cv1013 DB. A Receiver was appointed and took possession of the Defendant's property.

23.     During the course of the receivership proceedings, the Receiver sold the property and distributed the funds to the secured creditors in order of priority pursuant to Utah law.

24.     Plaintiff was a party to the receivership proceedings, but due to the fraudulent activities of Defendant, Plaintiff was in the lowest priority position of the secured creditors. As a result, there were insufficient funds in the receivership estate to fully repay Stewart pursuant to the terms of the Note and Trust Deed executed by Defendant in favor of Eastern Savings Bank as assigned to Stewart.

25.     Defendant failed to make even one payment pursuant to the Note.

26.     In the Receivership Action, Stewart only collected $133,068.79, and will likely not receive any additional funds from the Receivership Estate.

4

27.     Stewart has incurred costs and attorney's fees in attempting to collect under the Note.

28.     As a result of the Receivership Action, the Property has been sold by order of the Court.  Therefore, Stewart no longer has security for its Note.

29.     In order to induce Eastern to provide him with a loan, Defendant represented to Eastern in writing that there were no encumbrances on the property and that Eastern would have a first priority secured position.

30.     Defendant fraudulently created and recorded reconveyances of trust deeds to induce Eastern to give him a loan.

31.     At the time Defendant made the representations to Eastern and forged the reconveyances, Defendant knew that there were substantial loans on the property and that Eastern would not have a first priority lien.

32.     Eastern reasonably relied on the representations from Defendant and the reconveyances of record and believed that it would have a secured first priority position on the property; therefore, Eastern agreed to give the loan to Defendant.

33.     If Eastern had known that it would not have a first priority secured position, or that the reconveyances were fraudulent, Eastern would not have given the loan.

34.     As a result of Defendant's fraudulent conduct, Eastern, and Eastern's assignee Stewart, did not have a first priority secured position on the property and did not recover the full amount owing under the Note.

35.     Eastern conferred a benefit upon Defendant by loaning $920,000.00.  Eastern assigned all its rights under the loan to Stewart.

36.     The Defendant had knowledge of the benefit, as he received a large amount of cash.

37.     The Defendant retained the benefit by failing or refusing to repay any of the money back to Eastern or Stewart.

38.     In connection with receiving the Eastern loan, Defendant executed Affidavits and Indemnity as to Debts, Liens, and Possession, ("Indemnity Contract").

39.     In the Indemnity Contract, Defendant represented that there were no loans or liens securing the Property.

40.     At the time of executing the Indemnity Contract, Defendant knew that unpaid loans were outstanding to various entities, that the various entities had recorded liens against the Property, but Defendant had forged reconveyances to make it appear that there were no loans or liens.

41.     In executing the Indemnity Contract, Defendant acknowledged that "the Lender and title companies" were relying on the Affidavit to lend money and issue title insurance policies, and agreed to "pay on demand" to the lender and/or title companies "including Stewart Title Guaranty Company" "all amounts secured by any and all liens, claims, or rights not shown above, together with all costs, loss and attorney's fees that said parties may incur in connection with such unmentioned liens."

42.     Due to the forged reconveyances and the existence of additional liens not disclosed by Defendant, lenders other than Eastern had priority on the secured property.

43.     Due to Defendant's failure to disclose the existence of additional liens, Plaintiff incurred damages by paying a claim to Eastern pursuant to the title policy issued to Eastern.

6

44.     Although Plaintiff received an assignment of Eastern's Deed of Trust in exchange for payment of the claim, Stewart was unable to recover the monies paid, or the costs and attorneys' fees incurred, in Plaintiff's attempt to collect on the Note and Deed of Trust.

**FINDINGS OF FACT BASED UPON DOCUMENTS OF RECORD**

45.     Defendant is not on active duty in the military.

46.     Defendant is also a criminal defendant in a matter before this Court, captioned *U.S. v. Baylor Sinclair Stevens*, No. 2:05-cr-900-DB.

47.     The facts underlying this matter are the same facts underlying the criminal matter.

48.     Based upon the facts of this matter and the criminal matter, there are no facts indicating that Defendant is a member of the armed forces.

49.     The Note provides for interest at the rate of 12.75% per annum from the date of the Note (March 29, 2005), through August 31, 2008, then at the rate of 11.75% from September 1, 2008 through August 31, 2009, then at the rate of 10.75% from September 1, 2009 until maturity of the loan.

50.     The Note provides for a 5% late fee for each payment of principal and interest that was overdue by more than 15 days.

51.     Pursuant to the Note, payments are due on the first day of each month.  From May 1, 2005 until September 1, 2008, payments of principal and interest were due in the amount of $10,007.42.  From October 1, 2008, through September 1, 2009, payments of principal and interest are due in the amount of $9,321.57.  From October 1, 2009 through full repayment, monthly payments are due in the amount of $8,659.46.

52.     As of September 25, 2008, Defendant owes $769,106.02 in principal, and $259,305.32 in interest and late fees.

53.     As of September 25, 2008, Plaintiff has incurred $125,038.96 in attorney's fees and costs.

## CONCLUSIONS OF LAW

54.     The Court has subject matter jurisdiction.

55.     The Court has personal jurisdiction over the Defendant.

56.     Plaintiff has complied with the Servicemembers Civil Relief Act.

57.     Plaintiff is an assignee of Eastern Savings Bank.

58.     Defendant is in breach of the Note and Deed of Trust, and Plaintiff is entitled to damages for that breach.

59.     Defendant is in breach of the Indemnity Contract, and Plaintiff is entitled to damages for that breach.

60.     By recording fraudulent reconveyances of trust deed, Defendant is liable to Plaintiff for fraud pursuant to Utah state law.

61.     Plaintiff has been damaged in the amount of $769,106.02 in principal, and $259,305.32 in interest and late fees.

62.     Because of Defendant's breaches of the contracts, Plaintiff has incurred $125,038.96 in attorney's fees and costs in an attempt to recover the damages due to Defendant's breaches.

63.     The Note, Trust Deed, and Indemnity Contract entitle Plaintiff to recover its attorney's fees and costs.  The attorney's fees and costs are reasonable considering the amount of the debt, the complexity of the receivership action, and the experience of Plaintiff's counsel.

64.     Because of Defendant's fraudulent conduct, Plaintiff is entitled to punitive damages.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment is GRANTED, and judgment is entered in favor of Plaintiff Stewart Title Guaranty Company, and against Defendant Baylor Sinclair Stevens as follows:

A.     Principal in the amount of $769,106.02;

B.     Interest and late fees in the amount of $259,305.32 through September 25, 2008;

C.     After September 25, 2008, interest shall continue to accrue on the Principal in the amount of 11.75% from September 1, 2008 through August 31, 2009, then at the rate of 10.75% from September 1, 2009 until the judgment is collected;

D.     For each month that a payment is not timely received as provided in the Note, a late fee shall be added to the judgment as follows: from October 1, 2008, through September 1, 2009, the late fee shall be $466.08; from October 1, 2009 through full repayment, the late fee shall be $432.97;

E.     Attorney's fees and costs in the amount of $125,038.96 through September 25, 2008;

F.     Additional attorney's fees and costs as shall be proven by affidavit;

G.     Punitive damages in the amount of $500,000.00.

DATED this 22nd day of Oct. , 2008.

DEE BENSON
U.S. District Court Judge